Kathleen M. PAYNE, Plaintiff,

v.

HUNTINGTON UNION FREE SCHOOL DISTRICT, Robert T. Lee, Carol Hartough, Cynthia Brooks, Lynn Kaufman and Eunice Marchi, in their individual capacities, Defendants.

No. 99–CV–2847(JS) (ARL).

United States District Court, E.D. New York.

June 13, 2000.

Scott Michael Mishkin, Scott Michael Mishkin, PC, Islandia, NY, for Plaintiff.

Julianna Ryan, Kaufman, Borgeest & Ryan, New York City, for Defendants.

## MEMORANDUM & ORDER

SEYBERT, District Judge.

Pending before the Court is the motion of defendants Huntington Union Free School District; Robert T. Lee; Carol Hartough; Cynthia Brooks; Lynn Kaufman; and Eunice Marchi ("defendants"), to dismiss the First Amended Complaint for failure to state a claim upon which relief can be granted. *See* Fed.R.Civ.P. 12(b)(6). Defendants also move to dismiss the complaint against the individual defendants, asserting a qualified immunity defense. Plaintiff Kathleen M. Payne ("Payne") opposes the motion. For the reasons discussed below, the motion is granted.

### PRIOR HISTORY

By Memorandum and Order dated March 20, 2000, the Court granted the defendants' motion to dismiss the complaint pursuant to Rule 12(b)(6). The Court dismissed the claims against the individual defendants in their official capacities, with prejudice. The Court dismissed plaintiff's Equal Protection and First Amendment claims without prejudice to replead.

### BACKGROUND

Payne was employed as a school teacher with the Huntington Union Free School District from August 1997 through June 1998. Plaintiff holds a Master of Science Degree from SUNY New Paltz and a Baccalaureate Degree from Marymount College. She is certified to teach N–6 elementary and 7–12 English.

In August 1997, Payne's husband became the Superintendent of Schools of the District. After Payne's husband had been hired by the District, Payne interviewed for a part-time teaching job with the District. Plaintiff's interview panel included a current teacher at the Huntington school, the humanities department chairperson, the school's principal, and the District's assistant superintendent for curriculum. Following the interview and submission of a writing sample, Payne was offered the teaching job. The school board approved the appointment of plaintiff even after board members were informed that Payne's husband was the current District Superintendent of Schools. Plaintiff was not aware, nor was she ever warned, that she could be disqualified from employment within the District because of the District's anti-nepotism policy.

Payne was terminated by the District in June 1998. Prior to her termination, Payne believed that her part-time teaching position with the District was secure, because she had received both a request from the District for Payne's 1998–99 class schedule, and a request by her supervisor to teach an inclusion class during the 1998–99 school year, which Payne agreed to teach.

Payne's termination letter was dated June 16, 1998. The letter, which was signed by the District's Superintendent of Schools—Payne's husband—stated that Payne was being terminated because of the Board's desire not to continue an employment relationship between married couples or relatives where there may be a

potential conflict of interest or presumption of impropriety in personnel matters.

Payne alleges that the District had, at the time of her firing, at least fifty-seven other employees who either were related to or married to other employees within the District. Payne further claims that following her termination, the District hired eighteen new employees who were related by blood or marriage to existing District employees. She also alleges that the wives of a former superintendent and a former assistant superintendent were employed in the District while their husbands also were employed with the District. Payne alleges that as a result of being fired, she has experienced tension which almost ended her marriage. Payne commenced the present action on May 20, 1999.

### LEGAL STANDARDS

Although familiar, the legal standards governing the Court's consideration of a motion to dismiss under Rule 12(b)(6) bear repeating. First, the Court must accept as true all factual allegations set forth in the complaint. *Charles W. v. Maul,* 214 F.3d 350 (2d Cir.2000). Second, the Court must read the complaint generously and draw reasonable inferences in favor of the non-movant. *Id.* Third, "the district court may dismiss the complaint only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief.' " *Id.* (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Finally, the Court must remain mindful that a Section 1983 complaint, like other complaints, must do no more than comply with Fed.R.Civ.P. 8. *Id.* "That is to say, all it must contain is 'a short and plain statement of the claim showing that the pleader is entitled to relief.' " *Id.* (quoting Fed. R.Civ.P. 8(a)(2)).

### DISCUSSION

This action is brought pursuant to 42 U.S.C. § 1983. The solitary claim presented for relief in the First Amended Complaint is an asserted violation of the Equal Protection Clause. First Amended Complaint ("Am.Cplt."), ¶ 111. The plaintiff has abandoned her First Amendment claim.

Payne alleges that the defendants selectively enforced the School District's supposed anti-nepotism policy against her by terminating her employment while, at the same time, permitting scores of other similarly-situated District employees to remain in their positions. Plaintiff alleges that these other employees, like herself, also were relatives of fellow District employees. In short, Payne claims that she unconstitutionally was singled out for termination based on her relationship to another District employee, while other similarly-situated employees have not been terminated.

Taking these allegations as true, it is apparent that "[t]his case is lodged in a murky corner of equal protection law in which there are surprisingly few cases and no clearly delineated rules to apply." *LeClair v. Saunders,* 627 F.2d 606, 608 (2d Cir.1980); *see also Roth v. City of Syracuse,* 96 F.Supp.2d 171, 2000 WL 556153, at *6 (N.D.N.Y.2000) (pointing out the rather vague nature of a selective enforcement claim). While the Equal Protection Clause protects suspect classes and fundamental interests against unequal treatment, the Second Circuit has indicated that the clause also may be broad enough to protect against other types of inequities and classifications. *LeClair,* 627 F.2d at 611. However, as recently pointed out by a district court in this circuit, it is entirely unclear whether a selective enforcement claim can ever be successful. *Birmingham v. Ogden,* 70 F.Supp.2d 353, 372 & n. 13 (S.D.N.Y.1999) (noting that while the Second Circuit has stated that such a claim is viable, it has never affirmed a plaintiff's victory on this theory) (citing *Futernick v. Sumpter Township,* 78 F.3d 1051, 1057 (6th Cir.1996)).

In order to successfully plead an equal protection selective enforcement claim, a plaintiff must allege that (1) in comparison with others similarly-situated, she was selectively treated; and (2) the selective treatment "was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Lisa's Party City, Inc. v. Town of Henrietta*, 185 F.3d 12, 17 (2d Cir.1999); *see also Latrieste Restaurant v. Village of Port Chester*, 188 F.3d 65, 69 (2d Cir.1999) (same). "The 'key issue' in an equal protection claim alleging selective enforcement is impermissible motive." *Vertical Broadcasting, Inc. v. Town of Southampton*, 84 F.Supp.2d 379, 390 (E.D.N.Y.2000) (citing *Lisa's Party City*, 185 F.3d at 17.)

Here, plaintiff has not alleged that the defendants' motivations in terminating her employment were based on her race, sex, religion or another impermissible factor. Nor has she asserted that she was fired because the defendants desired to inhibit or punish the exercise of her constitutional rights. Nor has she claimed that the defendants were motivated by sheer malice or a bad faith intent to injure her. *See Lisa's Party City*, 185 F.3d at 16. In fact, she alleges no impermissible motive at all. And without an allegation identifying an impermissible motive, which is the "key issue" in a selective enforcement claim, *see id.* at 17, the First Amended Complaint fails to state a claim on which relief may be granted.

To be sure, the plaintiff has alleged that the defendants' actions were arbitrary and irrational. *See Muller v. Costello*, 187 F.3d 298, 309 (2d Cir.1999). However, even taking these allegations as true, there is no allegation that the actions—as arbitrary or irrational as they may have been—were motivated by a constitutionally impermissible consideration. And although Payne repeatedly alleges that she was fired because she was married to the District's superintendent, such a consider-

ation is not on the same level as race, religion, sex, intent to injure, or a desire to punish plaintiff for exercising her constitutional rights. *But see generally, Birmingham*, 70 F.Supp.2d at 371 ("there is no right under the Constitution to have the law go unenforced against you, even if you are the first person against whom it is enforced, and even if you think (or can prove) that you are not as culpable as some others who have gone unpunished.") (quoting *Futernick*, 78 F.3d at 1056).

For this reason, any future amendment to the pleading necessarily will have to not only identify the defendants' allegedly impermissible consideration, but also set forth facts sufficient to ensure that the allegation is not merely a hollow assertion. *See Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir.1987) (holding that a civil rights complaint containing only meaningless conclusory allegations fails to state a claim). It is this identification and explication of an impermissible consideration that will separate Payne's allegedly constitutional claim from a run-of-the-mill wrongful discharge claim. *Cf. Marfia v. T.C. Ziraat Bankasi*, 147 F.3d 83, 87 (2d Cir.1998) ("Under New York law, absent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time by either party.") (quotation and citation omitted).

Therefore, the motion to dismiss is GRANTED. The First Amended Complaint is dismissed without prejudice.

Because of the Court's ruling on this threshold issue, the Court need not specifically address the remainder of defendants' arguments in detail, except as follows. The argument that Payne's allegation of an official custom or policy is insufficiently pled is without merit. Payne has alleged both an official established anti-nepotism policy as well as an official "unwritten" policy and custom that practically no one in the Huntington Union Free School District follows the established policy, and that favoritism is the District's rule rather than its exception. For purposes of *Mo-*

*nell,* the allegations are sufficient. *See Monell v. Department of Soc. Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (government agency is liable under § 1983 "when execution of [its] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.").

Next, the argument that the claims against the defendant School District should be dismissed because there was no official policy that resulted in an injury to plaintiff also fails. This causation argument goes to the underlying merits of the case rather than to the pleading itself, and is more properly addressed at a later stage in this litigation. Finally, because of the Court's ruling on Payne's failure to adequately plead a constitutional violation, the Court is not permitted, at this stage, to address the individual defendants' qualified immunity argument. *See Charles W.,* 214 F.3d 350 (pointing out that the court first must address the sufficiency of the pleading of a constitutional violation prior to deliberating over the qualified immunity defense).

### CONCLUSION

For the reasons discussed above, the defendants' motion to dismiss the First Amended Complaint is GRANTED. The First Amended Complaint is DISMISSED without prejudice and with leave to replead.

The second amended complaint shall be filed and served no later than June 26, 2000. If the amended complaint is not filed and served by that date, the case will be deemed dismissed with prejudice.

SO ORDERED.