**HI POCKETS, INC., Plaintiff,**

v.

**THE MUSIC CONSERVATORY OF WESTCHESTER, INC., Laura Calzolari, City of White Plains, Michel Gismondi, individually and as Commissioner of Buildings of the City of White Plains; Zoning Board of Appeals of the City of White Plains, and Edward Dunphy, Esq., Corporation Counsel of the City of White Plains, Defendants.**

No. 01 CIV. 3706(CM).

United States District Court,
S.D. New York.

Feb. 28, 2002.

John A. Kornfeld, Greenfield Stein & Senior, LLP.

Brian S. Sokoloff, Miranda & Sokoloff, LLP.

Howard Dean.

## MEMORANDUM, DECISION, AND ORDER GRANTING DEFENDANTS MUSIC CONSERVATORY OF WESTCHESTER AND LAURA CALZOLARI'S MOTION FOR SUMMARY JUDGMENT AND THE WHITE PLAINS DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

McMAHON, District Judge.

Hi Pockets, Inc. ("HPI") brings this action against The Music Conservatory of Westchester, Inc. and Laura Calzolari (collectively, the "Conservatory defendants"), the City of White Plains, Michel Gismondi, individually and as Commissioner of Buildings of the City of White Plains, Zoning Board of Appeals of the City of White Plains, and Edward Dunphy, Corporation Counsel of the City of White Plains (collectively, the "White Plains defendants"). HPI alleges that defendants illegally issued or caused to be issued a building permit for the new Conservatory site in White Plains, New York. HPI alleges fifteen causes of action against the various defendants, two of which are Section 1983 claims against the municipality that give this Court jurisdiction over the pendant state claims. The Conservatory defendants move for summary judgment pursuant to Fed.R.Civ.P. 56 on all of the claims

asserted against it—the First, Second, Third, Eighth, Ninth, Tenth, Eleventh, Twelfth and Thirteenth Causes of Action—along with any other further relief the Court deems just and proper. The White Plains defendants move for a judgment on the pleadings in its favor pursuant to Fed. R.Civ.P. 12(c).

I find in favor of both the Conservatory defendants and the White Plains defendants. This case is dismissed in its entirety.

## FACTS PERTINENT TO THE MOTION

A. *Local Rule 56.1(c)*

Plaintiff has failed to file a statement of facts pursuant to Local Civil Rule 56.1(b). This failure means that the material facts in the Conservatory defendants' Local Civil Rule 56.1(a) statement are deemed admitted as a matter of law. *See* Local Rule 56.1(c); *see also Gubitosi v. Kapica*, 154 F.3d 30, 31 n. 1 (2d Cir.1998) (court "accept[ed] as true the material facts contained in defendants' Local Rule 3(g) statement because plaintiff failed to file a response"); *Dusanenko v. Maloney*, 726 F.2d 82, 84 (1984) (affirming district court's dismissal of action based on the uncontroverted facts adduced by defendants in its unopposed Rule 3(g) statement). I will, therefore, accept all of the Conservatory defendants' proposed facts as true for purposes of this motion.

B. *Pertinent Facts*

1. *Lease Documents*

On or about March 30, 1999, the Conservatory purchased certain property consisting of two buildings and a parking lot located at 214 and 216 Central Park Avenue in White Plains, New York from CAF-CO, L.P. [Conservatory Defendants' Rule 56.1 Statement, ¶ 1.] Prior to purchasing the property, the Conservatory received the Lease and Joint Use Parking Agreement governing HPI's use of the property as tenant, and was provided with an Estoppel Certificate from HPI on which it relied in purchasing the property. *Id.* at ¶ 2.

Previously, on or about February 20, 1997, the City of White Plains Planning Board had approved a site development plan for plaintiff HPI as the anticipated tenant at 214 Central Park Avenue (the "Resolution"). As part of HPI's application to the Planning Board, two "Parking Tables" were submitted entitled "Parking Requirements Zoning" and "Temporal Parking Allocation—Assuming Maximum Parking Per Assignment Requirement." These tables were prepared by HPI's own expert, Adler Consulting, Inc., in connection with HPI's application. *Id.* at ¶ 3. Pursuant to the Resolution, HPI was required to secure the right to use up to a maximum of 40 parking spaces. Of the 40 spaces, 28 were deemed "joint use parking spaces" to be shared with the tenants of 216 Central Park Avenue. Use was based upon the day, time of day and the demands of other tenants at 214 and 216 Central Park Avenue. *Id.* at ¶ 4.

On May 1, 1997, an Agreement of Lease ("Lease") was entered into between the Conservatory's predecessor in title, CAF-CO, L.P., as landlord and HPI as tenant with respect to a portion of the premises consisting of a stand-alone building at 214 Central Park Avenue, White Plains, New York. *Id.* at ¶ 5. Pursuant to Article 6 of the Lease, HPI agreed to use the parking spaces allocated to it and those spaces were to be jointly used as outlined in the parking plan approved by the City of White Plains Planning Board. *Id.* at ¶ 6. On October 9, 1997, a Joint Use Parking Agreement ("JUPA") was executed among

CAFCO, L.P., HPI, and Caiati of Westchester, Inc. *Id.* at ¶ 7.

The terms of the JUPA provided that HPI had "the right to use the spaces required by the February 20, 1997 Resolution of the Planning Board of the City of White Plains," namely, that "the Parking Lot shall contain a minimum of eighty (80) parking spaces of which twenty-eight (28) parking spaces were approved for joint use by: (a) Hi–Pockets and the office tenant at 214 Central Park Avenue; and (b) Caiati at 216 Central Park Avenue." *Id.* at ¶ 8. The JUPA annexed a December 30, 1996 letter from HPI's attorney, the two Parking Tables referenced above, and a May 1, 1997 letter from the Commissioner of Traffic. *Id.* at ¶ 9. It was further agreed in the JUPA that no other use would be made of the parking spaces without the prior approval of the designated board and as evidenced by express written approval adopted in accordance to the Zoning Ordinance of the City of White Plains. *Id.* at ¶ 10. Pursuant to Article 4 of the JUPA, no change or amendment to the JUPA could be effected unless the change or amendment is "set forth in writing and signed by the parties hereto (or their duly authorized successors or assigns), following review and approval by the Corporation Counsel of the City of White Plains as to form and content." *Id.* at ¶ 11.

It is undisputed that there has been no written amendment or changes to the JUPA, signed by the parties or their successors or assigns and approved by the Corporation Counsel of the City of White Plains as to form and content. *Id.* at ¶ 12.

On or about February 8, 1999, HPI signed an Estoppel Certificate to the Conservatory, certifying that the Lease, including the JUPA and a Stipulation of Settlement dated December 21, 1998 between Landlord and Tenant, had not been modified or amended. *Id.* at ¶ 13. HPI

further represented in the Estoppel Certificate that "each of the Lease Documents is in full force and effect and no defaults or breaches on the part of the Landlord or Tenant exists thereunder." HPI further certified that it did not have any counterclaims, offsets or defenses under any of the Lease Documents. *Id.* at ¶ 14. The final paragraph of the Estoppel Certificate states that HPI "acknowledges that the [Conservatory] is relying upon the accuracy of the statements herein contained." *Id.* at ¶ 15. The Conservatory did rely upon the Estoppel Certificate and the terms of the JUPA prior to purchasing the premises located at 214 and 216 Central Park Avenue, White Plains, New York on or about March 30, 1999. *Id.* at ¶ 16.

> 2. *Westchester County Supreme Court Special Proceeding, Index No. 18991–00*

On April 10, 2000, the respondent Commissioner of Buildings of the City of White Plains granted a building permit to the Conservatory. On or about November 30, 2000, HPI commenced a special proceeding pursuant to Article 78 of the CPLR in New York State Supreme Court, for the County of Westchester, Index No. 18891–00, by the filing of the Notice of Petition and Petition returnable on December 21, 2000. The Petition sought an order reversing and annulling the Commissioner's April 10 determination. The petition also sought to prevent the issuance of a Certificate of Occupancy to the Conservatory and an order requiring the City of White Plains Zoning Board of Appeals ("ZBA") to hear the appeal of HPI. *Id.* at ¶ 17.

On or about the same time, HPI moved by Order to Show Cause seeking the same relief and a temporary order revoking the building permit issued to the Conservatory and a stop work order as to construction at the Conservatory's new premises located

at 216 Central Park Avenue. *Id.* at ¶ 18. All temporary relief was denied. *Id.* Following separate motions made by the Conservatory and the City to dismiss HPI's petition upon Objection in Point of Law (a pre-answer motion), the Honorable Matthew F. Coppola issued a Decision and Order dismissing the Petition's request for temporary relief, and ordering the ZBA to respond to HPI's appeal. *Id.* at ¶ 19. No appeal of this decision was taken by HPI. *Id.* at ¶ 20.

### 3. *The HPI Appeal to the ZBA*

Pursuant to the Order of the Court, HPI's appeal to the ZBA was placed on the agenda on February 7, 2001 for presentation and thereafter adjourned to the March 7, 2001 ZBA meeting to afford HPI the opportunity to make any further arguments on behalf of its appeal. *Id.* at ¶ 21.

Following the March meeting, the Board found that: (1) it lacked jurisdiction over HPI's appeal; (2) assuming that it did have jurisdiction over the appeal, HPI lacked standing to bring the appeal; (3) assuming HPI had standing to bring the appeal, the appeal was untimely by reason of the applicable statute of limitations; and (4) assuming all of the above to have been proper, dismissed the appeal on the merits. *Id.* at ¶ 22. As to the merits of HPI's appeal, the ZBA found that the Building Commissioner's determination and interpretation that the Conservatory is a permitted principal use in its Zoning District was rational and supported by the record. The ZBA found that the Commissioner of Buildings was the proper approving agency for the site plan application for the Conservatory, and found that the Commissioner of Buildings' determination to approve the site plan was reached after careful consideration. The ZBA found that the application was a change from one permitted principal use to another permitted principal use, and that, based upon consultation with other City staff, the parking requirements for the new use was four (4) less than the former use as a furniture store. *Id.* at ¶ 23. The ZBA Resolution was filed on or about April 6, 2001.

HPI did not file an Article 78 Proceeding to overturn the ZBA's determination within 30 days from the filing of the above-referenced Resolution of the ZBA, as required by General City Law § 82. *Id.* at ¶ 24.

### 4. *Westchester County Supreme Court Action, Index No. 16399–00*

On or about October 20, 2000, HPI, which had received a Notice of Default and Notice of Cancellation of Lease from the Conservatory, commenced an action against the Conservatory over a dispute regarding obligations under the Lease and claimed parking rights. The Complaint and Order to Show Cause sought an injunction in the nature of a *Yellowstone* injunction preventing the Conservatory from terminating the Lease until such time as the dispute was resolved. The complaint also sought injunctive relief with respect to parking rights under the JUPA and that "the defendant-landlord be required to have the proper number of parking spaces for school before any certificate of occupancy is issued." Thereafter, the Conservatory withdrew its Notice of Default and Notice of Cancellation by reason of a notice issue. *Id.* at ¶ 25.

By Order to Show Cause dated January 12, 2001, the Conservatory moved for an injunction preventing HPI from interfering with the rights of the Conservatory with respect to the use of the parking lot under the terms of the JUPA and requiring HPI to comply with the terms of the JUPA and an attached parking space allocation. Said application was opposed by HPI wherein it contended that it was

again entitled to more parking spaces than set forth in the JUPA. *Id.* at ¶ 26. On January 12, 2001, a Temporary Restraining Order was issued by Judge Coppola against HPI. On that same day, the Conservatory served a new Notice of Default under the Lease.

On February 13, 2001, HPI filed an Order to Show Cause by reason of the Conservatory's service of the notice under the Lease, and again sought a *Yellowstone* injunction and leave to serve an Amended Complaint. That application was opposed in part by the Conservatory. *Id.* at ¶ 27.

By Order to Show Cause dated February 16, 2001, the Conservatory moved for an Order of Contempt by reason of HPI's violation of the prior Temporary Restraining Order issued by Judge Coppola on January 12, 2001. The Conservatory's contempt motion was opposed by HPI at which time HPI again asserted its position with respect to the JUPA and its alleged entitlement to additional parking spaces. *Id.* at ¶ 28. By decision dated February 16, 2001, the Honorable Matthew F. Coppola stated that until all of the evidence was reviewed and the motions decided, "the parties are directed to abide by the provisions of the [JUPA] as signed by the parties on October 9, 1997." *Id.* at ¶ 29.

By Order to Show Cause dated June 19, 2001, HPI moved for an Order of Contempt against the Conservatory and further sought an Order pending the hearing and determination of the application restraining the Conservatory from using the parking lot at various times during the week; restraining the Conservatory from interfering with HPI's right to use the parking lot; and restraining the Conservatory from removing any parking spaces or changing the parking "unless all provisions of the [JUPA] and resolutions from the planning board are complied with." The

temporary relief was denied following argument on June 19, 2001. *Id.* at ¶ 30.

Pursuant to Judge Coppola's directive, the parties were required to provide their respective positions regarding the ultimate issue which was to be determined by the Court, to wit: whether the JUPA had ever been amended in accordance with its terms. *Id.* at ¶ 31. The Conservatory opposed the HPI motion and followed the Court's direction, setting forth facts and law with respect to the ultimate issue. *Id.* HPI submitted reply papers and argued that the previously-submitted January 14, 1998 Resolution of the Planning Board and August 14, 1998 Certificate of Occupancy served to modify the terms of the JUPA. *Id.* at ¶ 32.

On or about July 3, 2001, Judge Coppola issued a Decision and order based upon the respective contentions of the parties with respect to the JUPA. *Id.* at ¶ 33. The Court stated in pertinent part as follows:

By order to show cause returnable on January 29, 2001, defendant [the Conservatory] sought to restrain plaintiff [HPI] from blocking the entrance way into the parking lot and to require plaintiff to abide by the parking space allocation as provided in the JUPA....

Plaintiff's position is that the JUPA is not only confusing and contradictory, *but that the Planning Board has amended the provisions and resolved to change the allocation of the spaces.* Plaintiff wants the parking lot dispute referred to the Planning Board for further review and clarification, but this Court cannot involve itself with administrative functions undertaken by municipal agencies under the circumstances here existing.

*Defendant urges that the JUPA is valid and binding and that it was never amended. The Court so finds.* Indeed, the agreement itself requires, *inter alia,*

that any such change or amendment would have to be set forth in writing and signed by the parties to the agreement following review and approval from the Corporation Counsel of the City of White Plains. *This did not occur.* Accordingly, *the Court holds that the parties will conduct their parking activities in keeping with the terms of the JUPA and will refrain from interfering with the parking rights of the other.* With that guidepost in place, the parties should undertake a joint marking of the parking spaces in an appropriate manner and to jointly arrange for whatever monitoring may be required.... The foregoing constitutes the decision and order of this Court (dated July 3, 2001). *Id.* (Emphasis added).

On July 20, 2001, the Conservatory served a copy of the Decision and Order of Judge Coppola with Notice of its Entry by hand delivery to HPI counsel Howard Dean, Esq.. *Id.* at ¶ 34. HPI did not file a Notice of Appeal until after its time to do so had expired pursuant to CPLR 5513 and CPLR 5515, which requires that a Notice of Appeal, whether by right or by permission, be filed and served within 30 days of written notice of its entry. *Id.* at ¶ 35.

On December 19, 2001, Judge Coppola issued an additional order in this action. This Order essentially reaffirms the Court's previous Decision and Order, but also grants the Conservatory a permanent injunction allowing it to stripe and sign the parking lot, and control parking therein consistent with the JUPA's terms. [Dec. 19, 2001 Decision and Order.] It notes in relevant part:

The Music Conservatory is the owner in occupancy of the premises and its right to use the parking lot is not conditioned upon any grant or license from the City of White Plains. The JUPA is the con-

tract which governs the rights of the owner of the parking lots and the tenants of the buildings in the allocation of and use of the shared parking lot. *Id.*

5. *The Commencement and Removal to the Court of Westchester County Supreme Court Action, Index No. 824–01*

On or about January 17, 2001, plaintiff HPI commenced still another action against the Conservatory and the City of White Plains. *Id.* at ¶ 36. The Conservatory defendants submitted their answer and the White Plains defendants moved for dismissal pursuant to CPLR 3211. *Id.* at ¶ 37. HPI opposed the White Plains' motion and served an Amended Complaint asserting two additional causes of action based in § 1983. Once these allegations were added to the complaint, the White Plains defendants timely removed the matter to this Court pursuant to 28 U.S.C. § 1441(b). The Conservatory defendants agreed to removal.

In the Amended Complaint, HPI alleges fifteen causes of action against the Conservatory defendants and the White Plains defendants. Against the Conservatory, HPI alleges that (1) the Conservatory wrongfully applied for and obtained a building permit (First and Second Causes of Action); (2) that Commissioner of Buildings Gismondi, Calzolari and the Conservatory conspired to avoid the formal review (Eighth Cause of Action); (3) that the Conservatory violated the JUPA, and in violating the JUPA, breached the covenant of quiet enjoyment by causing havoc and controversy in taking away plaintiff's parking (Third, Ninth and Tenth Causes of Action); and, (4) that the Conservatory defendants are liable for all costs and expenses of the litigation and for punitive damages (Eleventh, Twelfth and Thirteenth Causes of Action).

HPI's claims against the White Plains defendants are as follows: (1) as against Gismondi for illegally approving the Conservatory's application for a building permit, and for conspiring with the Conservatory to avoid the formal review for the site plan (Fourth and Eighth Causes of Action); (2) as against the ZBA for its failure to hear plaintiff's appeal (Fifth Cause of Action); (3) as against Dunphy, Corporation Counsel of the City of White Plains, for illegally preventing the ZBA from hearing plaintiff's appeal (Sixth Cause of Action); (4) as against Gismondi and Dunphy for conspiring to "avoid the decision of the Commissioner of Buildings from being reviewed by the [ZBA]" (Seventh Cause of Action); and (5) as against all defendant municipal officers and employees, for denial of plaintiff's civil and constitutional rights under § 1983 (Fourteenth and Fifteenth Causes of Action).

The only federal claims are the Fourteenth and Fifteenth Causes of Action against the White Plains defendants. All other claims are brought under state law.

The complaint seeks "actual" damages in the amount of $2,000,000.00 as against all named defendants under various theories as well as punitive damages in the amount of $10,000,000.00 against all named defendants.

The Conservatory defendants move for summary judgment on the grounds of collateral estoppel and *res judicata* and failure to assert a claim upon which relief can be granted. The City defendants move for a judgment upon the pleadings for failure to state a claim upon which relief can be granted.

## DISCUSSION

I. *The Conservatory Defendants' Summary Judgment Motion*

The Conservatory defendants move to dismiss all claims against them: the First,

Second, Third, Eighth, Ninth, Tenth, Eleventh, Twelfth and Thirteenth Causes of Action in plaintiff's Amended Complaint. All of these claims are asserted under State law.

### A. *Summary Judgment Standard*

■ Under Rule 56(c) of the Federal Rules of Civil Procedure, the Court will grant summary judgment if the evidence offered shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). As stated above, HPI's failure to file a statement pursuant to Local Civil Rule 56.1(b) resulted in the material facts in the Conservatory defendants' Local Civil Rule 56.1 statement to be deemed admitted as a matter of law. *See* Local Civil Rule 56.1(c); *see also Gubitosi v. Kapica,* 154 F.3d 30, 31 n. 1 (2d Cir.1998); *Dusanenko v. Maloney,* 726 F.2d 82, 84 (2d Cir. 1984). Nevertheless, the Court views the record in the light most favorable to the non-movant and resolves all ambiguities and draws all reasonable inferences against the movant. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Donahue v. Windsor Locks Bd. of Fire Commn'rs,* 834 F.2d 54, 57 (2d Cir.1987).

### B. *The First, Second and Eighth Causes of Action are Dismissed Because They are an Impermissible Collateral Attack of the Resolution of the ZBA, dated April 4, 2001, and the ZBA Resolution is Entitled to Res Judicata and Collateral Estoppel Effect*

■ In its First, Second and Eighth Causes of Action, HPI makes various allegations under state law. HPI alleges that the Commissioner of Buildings wrongfully

issued a building permit without any formal Site Plan approval or public input in violation of the City of White Plains Zoning Ordinance [Cmplt. at ¶ 26], that the Conservatory "knowingly submitted an application for a building permit without final site plan approval" [*id.* at ¶ 30], that the parties "conspired to avoid the [formal] approval procedures of the Planning Board and of the Common Counsel" [*id.* at ¶ 64], and that as a result, the parties "illegally issued a building permit and subsequently issued a Temporary Certificate of Occupancy" in violation of the local Zoning Ordinance [*id.* at ¶ 65].

The Conservatory defendants contend that these issues were decided by the White Plains ZBA in its April 4, 2001 Resolution dismissing HPI's appeal challenging the issuance of a Building Permit to the Conservatory by the Commissioner of Buildings Gismondi. The Conservatory defendants argue that HPI is precluded from appealing the ZBA because HPI failed to timely commence an Article 78 Proceeding after the issuance of the Resolution, and that the Resolution has collateral estoppel and *res judicata* effect with respect to the allegations contained within the First, Second and Eighth Causes of Action. I agree.

In its April 4, 2001 formal Resolution, the ZBA dismissed HPI's appeal on procedural grounds, but also found that HPI's allegations themselves were baseless. The ZBA found that both Gismondi and his predecessor had (1) made proper determinations that the use of the Conservatory's building as a music conservatory is a permitted principal use within the B–3 Zone District in which the building is located, and that this determination was rational and supported by the record, and (2) that plaintiff's claim that such use was prohibited was unpersuasive. *See* ZBA Resolution, at 19–24 The ZBA further found that

the Commissioner of Buildings was the appropriate agent to approve the Conservatory's Site Plan Application and that he made a proper determination in approving it. Furthermore, the ZBA noted that no formal "public hearing or notice of hearing was authorized by the Zoning Ordinance or by any other law because the Conservatory's 'Site Plan application ...' did not involve an 'environmentally sensitive site or feature' as that term is defined by Chapter 3–5 of the White Plains Municipal Code." *See* ZBA Resolution, at 12.

Plaintiff failed to commence an Article 78 Proceeding within thirty (30) days seeking to set aside the Resolution, and its time to do so expired. New York General City Law, Section 82; *see also Heysler v. Park,* 167 A.D.2d 837, 561 N.Y.S.2d 942 (4th Dep't 1990). Defendants are correct in stating that HPI may not collaterally attack the findings of the ZBA because it failed to bring an Article 78 proceeding. *See City of New York v. East New York Wrecking Corp.,* 161 A.D.2d 489, 555 N.Y.S.2d 755 (1st Dep't 1990) (citing *Lewis Tree Serv. v. Fire Dep't of City of New York,* 66 N.Y.2d 667, 669, 495 N.Y.S.2d 968, 486 N.E.2d 826 (1985)); *see also Young Men's Christian Association v. Rochester Pure Waters Dist.,* 37 N.Y.2d 371, 334 N.E.2d 586, 372 N.Y.S.2d 633 (1975).

█ The doctrines of *res judicata* and collateral estoppel apply to a determination by an administrative agency when the decision is final, including when no appeal has been taken from an adverse determination. *See* 73A N.Y. Jur. *Judgments,* § 452; *see also Fraser v. Brunswick Hosp. Med. Ctr., Inc.,* 150 A.D.2d 754, 542 N.Y.S.2d 204 (2d Dep't 1989) (finding that Worker's Compensation Board decision was final and conclusive as to defendant's affirmative defense because the defense was already dismissed by the Board, de-

fendant fully participated in the hearing before the Board and defendant never sought appellate review of the determination). The claims before the ZBA were identical to those alleged under state law in HPI's First, Second and Eighth Causes of Action. The ZBA dismissed these claims, finding that the Building Commissioner properly approved the Conservatory's Site Plan without formal review in accordance with local and state law. HPI fully participated in the hearing before the ZBA. In fact, the ZBA original hearing date of February 7, 2001 was adjourned to March 7, 2001 so that HPI could make further arguments on behalf of its appeal. HPI's failure to take an appeal from the ZBA Resolution precludes it from reopening that issue here.

C. *The Third and Ninth Causes of Action Must be Dismissed on the Grounds of Collateral Estoppel and Failure to State a Claim*

■ In its Third Cause of Action, HPI alleges that the Music Conservatory is bound by both the JUPA and by the Planning Board Resolutions of February 20, 1997 and January 14, 1998, and that the Conservatory has violated these agreements. [Cmplt. at ¶¶ 32–35.] In its Ninth Cause of Action, HPI reiterates its Third Cause of Action, and further alleges that HPI's lease with the Conservatory provides for parking for HPI as set forth in the Resolution of the Planning Board dated January 14, 1998, and that the Conservatory has, in violation of the lease, wrongfully taken away the parking allocated to HPI. [Cmplt. at ¶¶ 68–73.] Both of these causes of action are grounded in state law.

The Conservatory defendants argue that the Third and Ninth Causes of action should be dismissed on the ground of *res judicata* and collateral estoppel by virtue of the July 3, 2001 Decision and Order and the December 19, 2001 Decision and Order in the Westchester County Supreme Court Action, Index No. 16399–00. In that action, HPI's position was that the Planning Board had amended the provisions of the JUPA, and changed the allocation of spaces therein. The Conservatory argued that the JUPA was valid and binding and that it was never amended. In the July 3 Order, State Supreme Court Judge Coppola granted the Conservatory a preliminary injunction finding that the JUPA was valid and binding and was never amended, and that "the parties will conduct their parking activities in keeping with the terms of the JUPA." In the December 19 Order, Judge Coppola affirmed his July 3 Order, and issued a permanent injunction against HPI. In this Order, Judge Coppola once again held that the JUPA is the sole contract that governs the parties' parking rights. Judge Coppola spelled out the terms of the JUPA for the parties, and allocated specifically numbered spaces to both the Conservatory and HPI, directed the color striping of each space, and granted the Conservatory "the right to enforce these parking arrangements including, but not limited to, the right to hire parking attendants and to have tow trucks remove vehicles that are inappropriately parked." [December 19 Order, at 2–3.]

HPI is collaterally estopped from arguing that either of the Planning Board Resolutions amended the JUPA in any way, and that the Planning Board Resolutions provide for parking in the lot in question. It is questionable whether the July 3 Order granting a preliminary injunction is preclusive, because it is not a "final" determination. However, the permanent injunction, decision and order issued on December 19 is a final determination that has preclusive effect. *See, e.g., People v. Scanlon,* 6 N.Y.2d 185, 160 N.E.2d 453, 189 N.Y.S.2d 143 (1959) ("There is no question that the judgment of permanent injunction

... was a final determination.") The state court judge held that the Planning Board Resolutions are not binding on the parking rights of the parties and did not amend the JUPA in any way. This Court will not revisit that issue. As a result, HPI's Ninth Cause of Action is dismissed in its entirety.

■ HPI's Third Cause of Action alleges that the Conservatory has violated both the terms of the JUPA and of the Planning Board Resolutions. Based on the doctrine of collateral estoppel, the alleged violations of the Planning Board Resolutions are dismissed from this Cause of Action. I also find that the remainder of the Third Cause of Action, the allegation of the Conservatory's violation of the JUPA, fails to state a claim. There are no factual allegations of the Conservatory's violations of the JUPA in the Amended Complaint. Furthermore, in his December 19 Order, Judge Coppola explicitly interpreted the terms of the JUPA, and ordered the parties to implement these terms immediately. That Order resolves any disagreements between the parties over the terms of the JUPA. For these reasons, the remainder of HPI's Third Cause of Action is dismissed.

D. *The Tenth Cause of Action Must Be Dismissed For Failure to State a Claim Upon Which Relief Can Be Granted*

■ HPI's Tenth Cause of Action alleged that the Conservatory has breached the covenant of quiet enjoyment granted to HPI in its lease by causing "havoc and controversy and [by] tak[ing] away plaintiff's parking." [Cmplt. at ¶¶ 74–77.] This fails to state a claim.

■ A claim of breach of the covenant of quiet enjoyment requires actual or constructive eviction. *See Jacobs v. 200 East 36th Owners Corp.*, 281 A.D.2d 281, 722 N.Y.S.2d 137 (1st Dep't 2001); *Grammer*

*v. Turits*, 271 A.D.2d 644, 645–46, 706 N.Y.S.2d 453, 455–56 (2d Dep't 2000). HPI continues to occupy the premises leased to it by the Conservatory. HPI continues to enjoy parking rights for the benefit of these premises. There is no allegation of forced eviction or abandonment of the premises located at 214 Central Park Avenue. The breach of the covenant of quiet enjoyment claim is legally insufficient, and must be dismissed.

II. *The White Plains Defendants' Motion for Judgment on the Pleadings*

The White Plains defendants move for a judgment on the pleadings on all of the claims against them on the grounds of absolute immunity, *res judicata* and failure to state a claim for conspiracy and for failure to state a claim under 42 U.S.C. § 1983.

A. *The Fourth and Fifth Causes of Action are Dismissed on the Grounds of Absolute Immunity*

■ In its Fourth and Fifth Causes of Action, HPI makes allegations of wrongdoing against the City of White Plains, the Zoning Board of the City of White Plains and Michael Gismondi, the Commissioner of Buildings of the City of White Plains. Specifically, HPI alleges that Gismondi wrongfully approved the Conservatory's Site Plan Application [Cmplt. at ¶¶ 37—41] and that the ZBA wrongfully failed to hear HPI's appeal of Gismondi's decision in violation of the Zoning Ordinance [Cmplt. at ¶¶ 42—46].

The White Plains defendants argue that the municipal defendants are entitled to absolute immunity. I agree.

In its Fourth Cause of Action, HPI alleges that Commissioner Gismondi wrongfully did not require the Conservatory to go through formal site plan approval, and

performed other "illegal" acts such as mis-stating the permitted use of the Conservatory, underestimating the parking requirements of the Conservatory, ignoring the requirements of the Planning Board Resolutions in regards to the parties' parking rights, "upon information and belief, ... told the [Conservatory] to leave out of its plans any mention of the exterior modifications in order to avoid as much as possible the terms and conditions of the Zoning Ordinance of the City of White Plains and then proceeded to allow the exterior changes, and he failed to inform HPI of the change in site plan approval after the prior Commissioner of Buildings had informed everyone that formal site plan approval was required." [Cmplt. at ¶¶ 37–40.]

■■■ It is clearly established law that when a challenged action of a municipal official involves the exercise of discretion, the officer is not liable for the injurious consequences of such action, even if such action stems from negligence or even malice. *See Haddock v. City of New York,* 75 N.Y.2d 478, 484, 553 N.E.2d 987, 554 N.Y.S.2d 439 (1990); *Tango v. Tulevech,* 61 N.Y.2d 34, 40, 459 N.E.2d 182, 471 N.Y.S.2d 73 (1983). Whether the actions of a government official are cloaked with immunity requires an analysis of the functions and duties of the actor's particular position and whether they inherently entail the exercise of some discretion. *See Mon v. City of New York,* 78 N.Y.2d 309, 574 N.Y.S.2d 529, 579 N.E.2d 689 (1991).

The actions of Gismondi in approving the Conservatory's building permit are discretionary. *See Rottkamp v. Young,* 21 A.D.2d 373, 376, 249 N.Y.S.2d 330, *aff'd* 15 N.Y.2d 831, 257 N.Y.S.2d 944, 205 N.E.2d 866 (1965). In *Rottkamp,* the court held that a building inspector who refused to issue a building permit was immune from suit because his action was discretionary. *Id.* The court stated:

We think that the action of the defendant ... in determining, albeit erroneously, that the plaintiffs were not entitled to a building permit for the erection of a diner, was discretionary and quasi-judicial in character. This determination necessarily involved the construction of the zoning ordinance and a consideration of the facts before him—an act which a building inspector must perform as part of his responsibilities. Zoning is now an accepted and widespread method of the municipality in guarding against the growth of undesirable and destructive uses of property; and the duties of a building inspector are an essential and indispensable part of the process in enforcing the established zoning pattern of the municipality. In this light, we hold that his power to issue a building permit should not be hampered in its exercise by the threat of suit for damages on behalf of an applicant.

*Id.*

Based on the allegations in the Amended Complaint, it is clear that the acts challenged by HPI in its Fourth Cause of Action are completely discretionary. Commissioner Gismondi reviewed the Conservatory's application for a permit, calculated the appropriate number of parking spaces needed for the building's various uses, and conferred with other city officials in reviewing the application. The challenged actions here are protected by absolute immunity and plaintiff's fourth cause of action against municipal defendant Gismondi and the City of White Plains must be dismissed.

I also note that HPI's Fourth Cause of Action must also be dismissed on the grounds of *res judicata* and collateral estoppel for the reasons stated above. The ZBA did render a decision on HPI's appeal of Gismondi's decision, and found his ap-

proval of the Conservatory's opinion to be fair and proper.

▮▮▮ The actions challenged by HPI in its Fifth Cause of Action must also be dismissed because the actions of the ZBA are also protected by absolute immunity. The ZBA is a quasi-judicial body; the acts of quasi-judicial bodies are protected by absolute immunity when such acts are quasi-judicial in nature. *See Allan v. Rosenblum*, 201 A.D.2d 136, 615 N.Y.S.2d 410 (2d Dep't 1994); *Orange County Pub. Div. of Ottaway Newspapers v. Council of City of Newburgh*, 60 A.D.2d 409, 401 N.Y.S.2d 84 (2d Dep't 1978), *aff'd* 45 N.Y.2d 947, 411 N.Y.S.2d 564, 383 N.E.2d 1157 (1978) (finding deliberative proceedings of a zoning board regarding a variance application were quasi-judicial).

The challenged actions of the ZBA in initially refusing to hear HPI's appeal of Commissioner Gismondi's decision (although they later did hear this very appeal), were quasi-judicial in nature, and are therefore entitled to absolute immunity. The Fifth Cause of Action is dismissed.

B. *The Sixth Cause of Action Must Be Dismissed For Failure to State a Claim*

▮▮▮ In its Sixth Cause of Action, HPI challenges the manner in which Edward Dunphy, the Corporation Counsel for the City of White Plains, counseled the other municipal defendants regarding plaintiff's appeal before the ZBA, and alleges that he "instructed the [ZBA] not to do anything with the appeal of the plaintiff to the [ZBA] in violation of the Zoning Ordinance.". [Cmplt. at ¶¶ 47—52.] Plaintiff seeks damages as a result of this alleged act. Plaintiff's claim, since it seeks damages for Dunphy's alleged acts, must be considered to be one in negligence.

▮▮▮ In order to assert such a negligence claim against an attorney, or any other professional, plaintiff must show that there was either actual privity of contract between the parties or a relationship so close as to approach that of privity. *See Prudential Ins. Co. of America v. Dewey, Ballantine, Bushby, Palmer & Wood*, 80 N.Y.2d 377, 590 N.Y.S.2d 831, 605 N.E.2d 318 (1992); *Ossining Union Free Sch. Dist. v. Anderson LaRocca Anderson*, 73 N.Y.2d 417, 539 N.E.2d 91, 541 N.Y.S.2d 335 (1989). Dunphy, as Corporation Counsel to the City of White Plains, was in no privity with HPI. Accordingly, HPI cannot hold Dunphy liable for advising any official or agency of the City of White Plains on HPI's appeal to the ZBA, and HPI's Sixth Cause of Action must be dismissed.

C. *The Seventh Cause of Action Must be Dismissed for Failure to State a Claim*

▮▮▮ In its Seventh Cause of Action, HPI alleges that, under state law, municipal defendants Gismondi and Dunphy "conspired together to avoid the decision of the Commissioner of Buildings from being reviewed by the [ZBA]." [Cmplt. at ¶ 54.]

▮▮▮ This claim fails because there is no independent tort of conspiracy under New York law. *Dobies v. Brefka*, 263 A.D.2d 721, 694 N.Y.S.2d 499 (3d Dep't 1999) (citing *Chiaramonte v. Boxer*, 122 A.D.2d 13, 504 N.Y.S.2d 182 (2d Dep't 1986)). This cause of action makes no allegation of wrongdoing actionable under New York law, and therefore must be dismissed.

D. *The Fourteenth and Fifteenth Claims for violation of HPI's Civil and Constitutional Rights under 42 U.S.C. § 1983 Must Be Dismissed For Failure to State A Claim*

HPI's two federal claims alleging violations of § 1983 are insufficient as a matter of law.

HPI's sparse pleading consists of the following "specific" allegations: "Because of the actions of all the defendants, plaintiff has been denied its civil and constitutional rights," [Cmplt. at ¶ 92], and "Plaintiff has been denied its rights and is entitled to damages pursuant to 42 U.S.C. § 1983," [Cmplt. at ¶ 95]. In a most generous interpretation of these Causes of Action, this Court concludes the Fourteenth and Fifteenth Causes of Action are intended to state an Equal Protection claim and a due process claim, respectively.

### 1. *The Equal Protection Claim (Fourteenth Cause of Action)*

 HPI appears to allege that the White Plains defendants deprived it of the equal protection of the laws because they discriminated against HPI by selectively granting building permits to the Conservatory on the basis of political motives. In order to plead an equal protection selective enforcement claim, plaintiff must allege that (1) in comparison with others similarly situated, she was selectively treated; and (2) the selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish exercise of constitutional rights, or malicious or bad faith intent to injure. *See Lisa's Party City, Inc. v. Town of Henrietta,* 185 F.3d 12, 17 (2d Cir.1999); *Payne v. Huntington Union Free School Dist.,* 101 F.Supp.2d 116, 119 (E.D.N.Y.2000). The "key issue" in such a claim is impermissible motive. *See Lisa's Party City, Inc.,* 185 F.3d at 17.

Since HPI has not alleged that it was discriminated against because of race, sex religion, or another impermissible factor, or to prevent it from exercising a constitutional right, I must look to the complaint for an allegation of a malicious intent by the defendants to injure HPI. But nowhere in its complaint does HPI allege that the White Plains defendants intended to injure it. HPI does make conclusory claims of political corruption in the granting of the Conservatory's building permit. *See, e.g.* Dean Aff. in Opp. to White Plains Defendants' Mot. to Dismiss, at ¶ 10 ("The acts of the Commissioner of Buildings were politically motivated to appease the Mayor of White Plains and other prominent politicians and influential supporters of the [Conservatory]."); *id.* at ¶ 37 ("[Gismondi] ignored the Zoning Code in order to pay back the people who appointed him."); *id.* at ¶ 38 ("This was a purely political act which was illegal and which breached the civil and property rights of the plaintiff."). However, none of these allegations creates a claim that the White Plains defendants intended *to injure HPI;* they merely allege that the White Plains defendants intended to aid the Conservatory or other politicians. Without an allegation identifying a malicious intent to harm HPI, the Fourteenth Cause of Action fails to state a claim upon which relief can be granted.

 Moreover, HPI was not the party applying for the permit. HPI was a third party who opposed someone else's (the Conservatory's) application. It was denied nothing. Therefore, HPI was not "treated" at all, selectively or otherwise. This Court has previously held, "Failure to proceed *against others* who are comparably situated is not by itself a basis for finding a denial of equal protection." *Gottlieb v. Village of Irvington,* 69 F.Supp.2d 553, 559 (S.D.N.Y.1999) (McMahon, J.) (emphasis added). I am hard pressed to see how HPI could have suffered an equal protection violation simply because its opposition to the Conservatory's permit application was unsuccessful. Failing to persuade authorities that someone else should be denied a permit does not give rise to an equal protection violation.

Since HPI can not allege an equal protection claim against the White Plains defendants because no action has been taken *against HPI* by the White Plains defendants, the Fourteenth Cause of Action must be dismissed.

### 2. The Due Process Claim (Fifteenth Cause of Action)

 Read most charitably to plaintiff, HPI appears to allege that the Commissioner of Buildings of the City of White Plains intentionally failed to follow the law due to political reasons, and this intentional act resulted in the violation of HPI's due process. *See* Dean Aff. in Opposition to White Plains Defendants' Motion to Dismiss, at ¶ 16. This allegation fails to state a claim.

 The Due Process Clause of the Fourteenth Amendment is not violated when a state employee, through a random and unauthorized act in contravention of established law, intentionally deprives individual of property or liberty, as long as the state provides a meaningful postdeprivation remedy. *See Hellenic American Neighborhood Action Committee ("HANAC") v. City of New York*, 101 F.3d 877, 880 (2d Cir.1996). In HPI's case, the alleged deprivation of its "property interest" occurred because of an arbitrary act—the granting of the Conservatory's building permit for political reasons. Thus, HPI's due process claim can only survive if New York does not provide adequate postdeprivation procedures.

New York does provide adequate appellate procedures to contest the grant of a building permit, and HPI had the full opportunity to take advantage of them. HPI appealed to the ZBA, and the ZBA heard its appeal. Following the ZBA's denial of its appeal, HPI had the right to commence an Article 78 proceeding. This Circuit has held that an Article 78 proceeding is a "perfectly adequate postdeprivation remedy" in such a situation, and that constitutional issues can be decided in Article 78 proceedings *See HANAC*, 101 F.3d at 881 ("An Article 78 proceeding is adequate for due process purposes even though the petitioner may not be able to recover the same relief that he could in a § 1983 suit.") (citing *Hudson v. Palmer*, 468 U.S. 517, 535, 104 S.Ct. 3194, 3204–05, 82 L.Ed.2d 393 (1984)).

In *HANAC*, plaintiff commenced an Article 78 proceeding, but failed to raise its due process claims during that proceeding. Plaintiff filed a § 1983 due process action after the Article 78 proceeding was over. The Second Circuit found that the § 1983 due process action could not be resuscitated "simply because an Article 78 proceeding is now barred by Article 78's four-month statute of limitations." *Id.* at 881. "Where, as here, Article 78 gave a meaningful opportunity to challenge [the disputed action] . . ., [HANAC] was not deprived of due process simply because [it] failed to avail [itself] of the opportunity." *Id.* (quoting *Giglio v. Dunn*, 732 F.2d 1133, 1135 (2d Cir.1984)). The same is true here.

 The doctrine that federal courts are available to hear § 1983 suits despite the availability of adequate state procedures does not apply in this situation because "there *is* no constitutional violation (and no available § 1983 action) when there is an adequate state postdeprivation procedure to remedy a random, arbitrary deprivation of property or liberty." *Id.* at 882. *See also Zinermon v. Burch*, 494 U.S. 113, 132, 110 S.Ct. 975, 986–87, 108 L.Ed.2d 100 (1990); *Parratt v. Taylor*, 451 U.S. 527, 541, 101 S.Ct. 1908, 1916, 68 L.Ed.2d 420 (1981); *Hudson v. Palmer*, 468 U.S. at 531, 533, 104 S.Ct. at 3202–04.

■ Despite the fact that a remedy, in and of itself, never constitutes a "cause of action," plaintiff's Eleventh, Twelfth and Thirteenth Causes of Action constitute various requests for monetary damages, costs, expenses and legal fees. Since all of the other claims have been dismissed, no cognizable legal claim against any of the defendants remains, and these "causes of action" are hereby dismissed.

## CONCLUSION

The Conservatory defendants' motion for summary judgment is GRANTED. The White Plains' defendants' motion for judgment on the pleadings is GRANTED.

This constitutes the decision of this Court.

The clerk of the court is hereby ordered to close this case.