Gregory STOLOW, Gregory Stolow trading as Gold Medal Auctions, Plaintiffs,

v.

GREG MANNING AUCTIONS INC., Ivy & Mader Philatelic Auctions, Inc., Earl P.L. Apfelbaum, Inc., John D. Apfelbaum, Anthony Feldman, Davitt Felder, Davitt Felder, Inc., Dana Okey, Stephen Osborne, Robert A. Siegel Auction Galleries, Inc., Shreves Philatelic Galleries Inc., Hr Harmer Inc., Matthew Bennett Inc., Daniel F. Kelleher Co. Inc., Edward Younger, Ahmed Hegazi, American Philatelic Society, American Stamp Dealers Association, Defendants.

No. 02 Civ. 2591(SAS).

United States District Court, S.D. New York.

Feb. 14, 2003.

Jonathan B. Altschuler, New York City, for Plaintiffs.

Ronald C. Minkoff, Jessie F. Beeber, Jennifer R. Rackoff, Frankfurt Garbus Kurnit Klein & Selz, P.C., New York City, for Defendants Greg Manning Auctions Inc., Ivy & Mader Philatelic Auctions, Inc., Robert A. Siegel Auction Galleries, Inc., Shreves Philatelic Galleries Inc., HR Harmer Inc., and Daniel F. Kelleher Co. Inc.

Christopher M. Houlihan, James M. Strauss, Putney, Twombly, Hall & Hirson LLP, New York City, for Defendants American Stamp Dealers Association, Inc. and the American Philatelic Society.

James A. Mitchell, Stillman & Friedman, P.C., New York City, for Defendants John D. Apfelbaum, Earl P.L. Apfelbaum, Inc., Davitt Felder, and Davitt Felder, Inc.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

On April 4, 2002, Gregory Stolow brought this action in his individual capacity and trading as Gold Medal Auctions (collectively "Stolow"). The suit arises from defendants' alleged bid-rigging scheme. Stolow seeks damages under: the Sherman Act, the New York State Donnelly Act, the Federal Racketeer Influenced and Corrupt Organization Act ("RICO"), common law fraud, conspiracy, and aiding and abetting. Defendants now move for dismissal of Stolow's First Amended Complaint ("Am.Compl.") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and in the alternative, summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

## I. BACKGROUND

### A. The Parties

Stolow is a citizen of New York and worked as an auctioneer and stamp dealer, occasionally trading as Gold Medal Auctions. Am. Compl. ¶ 1. Defendants include John D. Apfelbaum, Davitt Felder, Davitt Felder, Inc., Anthony Feldman, Dana Okey, Stephen Osborne, Edward Younger, and Ahmed Hegazi[1] (collectively "Stamp Dealers"). *Id.* ¶¶ 20–25, 30–31. The Stamp Dealers placed bids and purchased stamp lots at auctions held in New York

---

1. Although Ahmed Hegazi did not actually place bids and purchase stamps, he is consid-

and other states.[2] *Id.* Defendants also include Greg Manning Auctions Inc., Ivy & Mader Philatelic Auctions, Inc., Robert A. Siegel Auction Galleries, Inc., Shreves Philatelic Galleries Inc., HR Harmer Inc., Earl P.L. Apfelbaum, Inc., Matthew Bennett Inc., and Daniel F. Kelleher Co. Inc. (collectively "Auction Houses"). *Id.* ¶¶ 17–19, 26–29, 49. The Auction Houses conducted general stamp auctions. *Id.* The remaining defendants are the American Stamp Dealers Association, Inc. ("ASDA") and the American Philatelic Society ("APS") (collectively "Trade Associations"). *Id.* ¶¶ 32–33. The Trade Associations are trade organizations in the stamp industry whose members include stamp auctioneers and stamp dealers.

### B. The Complaint

Stolow alleges that in 1970, the Stamp Dealers began rigging bids at public postage stamp auctions. *Id.* ¶ 40. The Stamp Dealers, who referred to themselves as the "Ring", agreed to share bidding information prior to auctions. *Id.* ¶ 41. The Ring reviewed stamp lots and submitted secret bids among themselves for particular lots. The Ring member who submitted the highest bid for a specific lot "won" the privilege of being the only member who would bid on that lot at the actual auction. *Id.* ¶ 54. Under this arrangement, the "winning" Ring member would submit a very high bid at the actual auction. As a result, "[a]ny non Ring member dealer would be forced to bid at a [level] where a profit on that lot was minimal or actually resulted in a loss when resold." *Id.* In exchange for the exclusive right to bid on a lot, the "winning" Ring member made payments to the other members. *Id.* ¶ 44.

The Auction Houses were aware of the Ring's activities and assisted in the bid-rigging scheme. The Auction Houses extended favorable credit terms to Ring members. The Ring was also given special private viewing access to the stamp lots prior to auctions. *Id.* ¶ 43. In addition, the Auction Houses reduced the Ring's competition by deliberately mis-describing the stamp collections in their catalogs in a manner that discouraged other bidders. These catalogs were sent worldwide to mail bidders who represented the majority of potential bidders at the sales. *Id.* ¶ 55. The Auction Houses benefitted from this arrangement because floor attendance was reduced, drastically decreasing overhead and increasing the Auction Houses' profits. *Id.* This bid-rigging scheme continued until 1999. *Id.* ¶ 40.

Because of the scheme, Stolow and other bidders refrained from participating in auctions whenever they learned that a Ring member was bidding. *Id.* ¶ 54. Competition at the auctions was significantly reduced and sellers earned less as a result of the bid-rigging scheme.[3] Stolow prohibited the Ring from participating in

---

ered a "Stamp Dealer" here because he allegedly compiled the secret bids for the dealers prior to the auctions. *See id.* ¶ 30.

2. On January 28, 2002, John D. Apfelbaum and Earl P.L. Apfelbaum pled guilty to criminal charges of violating section 1 of the Sherman Act. *See* Am. Compl. ¶ 34. On April 16, 2002, Davitt Felder and Davitt Felder, Inc. pled guilty to the same charges. *See id.* ¶ 35.

3. The Amended Complaint includes contradictory allegations that the Ring drove stamp prices above competitive levels and that it brought stamp prices below competitive levels. *Compare* Am. Compl. ¶ 54 ("Any non Ring member dealer would be forced to bid at a level, where a profit on that lot was minimal or actually resulted in loss when resold.") *with id.* ¶ 58 (Defendants' actions restrained trade by "reducing the prices paid by Ring members to sellers below their competitive levels."). For the purpose of the Rule 12(6) motion, all inferences must be drawn in Stolow's favor. Accordingly, it is fair to infer that the Ring would bid both above and below competitive prices.

auctions that he conducted. *Id.* ¶ 13 Consequently, the Ring boycotted Stolow's auctions and he was forced to relocate outside of Manhattan and was eventually driven out of business. *Id.* ¶ 56.

Based on these events, Stolow advances seven claims for relief.[4] Defendants submitted two separate motions to dismiss Stolow's claims. *First,* the Stamp Dealers and Auction Houses move to dismiss Claims I—VI. *See* Defendants Greg Manning Auctions Inc., Ivy & Mader Philatelic Auctions, Inc., Robert A. Siegel Auction Galleries, Inc., Shreves Philatelic Galleries Inc., HR Harmer Inc., and Daniel F. Kelleher Co. Inc.'s Memorandum in Support of Motion to Dismiss ("Auction Houses Mem.") at 1. (Defendants John D. Apfelbaum, Earl P.L. Apfelbaum, Inc., Davitt Felder, and Davitt Felder, Inc. join in the arguments made in the Auction Houses Mem.[5]). *Second,* the Trade Associations move to dismiss Claims III and VII, the only two claims against them. *See* American Stamp Dealers Association, Inc., and American Philatelic Society's Memorandum in Support of Motion to Dismiss ("Trade Assocs. Mem.") at 1, 5. In the alternative, the Stamp Dealers and Auction Houses move for summary judgment on Claims I, II, III, and V, pursuant to Rule 56. *See* Auction Houses Mem. at 1.

## II. MOTION TO DISMISS

### A. Legal Standard

A motion to dismiss should be granted only if " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of [his] claim which would entitle [him] to relief.' " *Weixel v. Board of Educ. of New York,* 287 F.3d 138, 145 (2d

Cir.2002) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (alterations omitted)). At the motion to dismiss stage, the issue " 'is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.' " *Phelps v. Kapnolas,* 308 F.3d 180, 184–85 (2d Cir.2002) (quoting *Chance v. Armstrong,* 143 F.3d 698, 701 (2d Cir. 1998)). A complaint need not state the legal theory, facts, or elements underlying the claim, except in certain instances. *Compare* Fed.R.Civ.P. 8 *with* Fed.R.Civ.P. 9. Pursuant to the simplified pleading standard of Rule 8(a), a complaint must only include "a short and plain statement of the claim showing that the pleader is entitled to relief." *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (quoting Rule 8(a)(2)). In contrast, the heightened pleading standard of Rule 9(b) requires that in claims of fraud or mistake "the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b).

The task of the court in ruling on a Rule 12(b)(6) motion is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Pierce v. Marano,* No. 01 Civ. 3410, 2002 WL 1858772, at *3 (S.D.N.Y. Aug. 13, 2002) (internal quotation marks and citations omitted). When deciding a motion to dismiss, courts must accept all factual allegations in the complaint as true, and draw all reasonable inferences in plaintiff's favor. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2002). Courts

---

**4.** The Amended Complaint mistakenly labels two separate claims as Claim VI.

**5.** The following Stamp Dealers have not appeared in this action: Anthony Feldman,

Dana Okey, Stephen Osborne, Edward Younger, and Ahmed Hegazi. There has also been no appearance by the Auction House of Matthew Bennett Inc.

may not consider matters outside the pleadings but may consider documents attached to the pleadings, documents referenced in the pleadings, or documents that are integral to the pleadings. *See id.* at 152–53.

### B. Claims I and II: Sherman Act and Donnelly Act Violations

#### 1. Standing

Dismissals in antitrust cases "prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly." *Hospital Bldg. Co. v. Trustees of Rex Hosp.*, 425 U.S. 738, 746, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976). "Nonetheless, '[i]t is not … proper to assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated the antitrust laws in ways that have not been alleged.'" *George Haug Co. v. Rolls Royce Motor Cars Inc.*, 148 F.3d 136, 139 (2d Cir.1998) (quoting *Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983)).

 To plead an antitrust action, a plaintiff must first allege standing to bring suit. A plaintiff only has standing if he suffered an antitrust injury. *See G.K.A. Beverage Corp. v. Honickman*, 55 F.3d 762, 766 (2d Cir.1995); *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 250 (2d Cir.1985) (citing *Associated Gen. Contractors*, 459 U.S. at 538–40, 103 S.Ct. 897). An antitrust injury is "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344, 110 S.Ct. 1884, 109 L.Ed.2d 333 (1990). "The injury should

reflect the anticompetitive effect either of the violation or of the anticompetitive acts made possible by the violation." *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 489, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977). "The fact that defendants' behavior is alleged to be illegal per se under § 1 of the Sherman Act does not in any way diminish the requirement that plaintiffs show an *antitrust* injury." *Volmar Distribs., Inc. v. New York Post Co.*, 825 F.Supp. 1153, 1159 (S.D.N.Y.1993) (emphasis in original).

 The purpose of the antitrust laws is to protect competition, not competitors. *See George Haug*, 148 F.3d at 139. Therefore, a plaintiff must allege an injury beyond harm to an individual competitor. *See Todd v. Exxon Corp.*, 275 F.3d 191, 213 (2d Cir.2001) ("An antitrust plaintiff must allege not only cognizable harm to [himself], but an adverse effect on competition market-wide."); *Electronics Communications Corp. v. Toshiba America Consumer Prods.*, 129 F.3d 240, 242 (2d Cir. 1997). The plaintiff must allege "that the challenged action has had an *actual* adverse effect on competition as a whole in the relevant market." *Id.* (emphasis in original). To survive a motion to dismiss, Stolow must *plead* an antitrust injury, even if the chances of proving such an injury are small. *See George Haug*, 148 F.3d at 139.

#### 2. Stolow Has Standing to Bring Sherman Act and Donnelly Act Claims

 Claims I and II of the Amended Complaint allege that the Stamp Dealers and Auction Houses unreasonably restrained interstate trade in violation of the Clayton Act,[6] the Sherman Act[7] and the

---

**6.** Stolow is seeking treble damages for the antitrust violations pursuant to 15 U.S.C. § 15.

**7.** Section 1 of the Sherman Act provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint

Donnelly Act.[8] The issue is whether Stolow has alleged that the bid-rigging scheme described in the Amended Complaint harmed competition as a whole. He first alleges that he was personally injured by the Ring's bid-rigging scheme, claiming that he lost his source of business "because of the difficulty of buying stamps at [public auctions] against Ring members who could drive up the prices to force him to be unable to buy stamps and eliminated him as a buyer at the sales." Am. Compl. ¶ 56.

But Stolow goes on to allege injury to competition within the stamp trading industry as a whole in the following ways: *First,* competition among bidders at auctions decreased because competitors refrained from participating when they learned that Ring members were bidding. *Id.* ¶¶ 54, 56. *Second,* competition among bidders decreased because the Auction Houses purposely discouraged non-Ring members from bidding by misdescribing stamp lots in their catalogs. *Id.* ¶ 55. *Third,* the Stamp Dealers and Auction Houses reduced "the prices paid by Ring members to sellers below their competitive levels." *Id.* ¶ 58. According to Stolow, because bidders throughout the industry were intimidated by the bid-rigging, the Ring was practically the exclusive bidder at many auctions. Thus, sellers did not receive competitive prices for their stamps. Stolow has standing because he has sufficiently alleged that the bid-rigging scheme resulted in antitrust injuries.

## C. Claim III: Conspiracy

■ Defendants next challenge Stolow's claim that the Auction Houses "conspired together and maliciously and wilfully entered into a scheme to rig and manipulate" stamp auctions. Am. Compl. ¶ 70. Stolow also claims that the Trade Associations "aided and supported the wrongful conspiracy by failing to police and rectify the legal practices of the stamp industry." *Id.* ¶ 72. Finally, Stolow claims that Greg Manning aided and abetted the conspiracy.

Although there is no substantive tort of conspiracy under New York law, a plaintiff may allege conspiracy to connect the actions of separate defendants with an otherwise actionable tort. *See Hi Pockets, Inc. v. Music Conservatory of Westchester, Inc.,* 192 F.Supp.2d 143, 157 (S.D.N.Y. 2002); *Alexander & Alexander of New York, Inc. v. Fritzen,* 68 N.Y.2d 968, 510 N.Y.S.2d 546, 547, 503 N.E.2d 102 (1986). If a conspiracy claim does not have an underlying actionable tort, it must be dismissed. *See Hi Pockets,* 192 F.Supp.2d at 157.

The Amended Complaint does not allege an underlying actionable tort to support the conspiracy claim. Claim VI, which alleges fraud, is Stolow's only tort claim. However, because the fraud claim is dismissed, *see infra* Part II.F, the conspiracy claim against the Auction Houses and the Trade Associations is also dismissed. For the same reason, the aiding and abetting claim against Greg Manning is also dismissed.

---

of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1 (2002).

**8.** The Donnelly Act provides: "Every contract, agreement, arrangement or combination whereby ... competition or the free exercise of any activity in the conduct of any business, trade or commerce or in the furnishing of any service in this state is or may be restrained ... is hereby declared to be against public policy, illegal and void." N.Y. Gen. Bus. § 340 (2002).

The Sherman Act and Donnelly Act claims are discussed as if one claim because "New York's antitrust law ... is 'modeled on the Sherman Act and should be construed in light of federal precedent.'" *Granite Partners, L.P. v. Bear Stearns & Co.,* 17 F.Supp.2d 275, 298 (S.D.N.Y.1998) (quoting *Kramer v. Pollock–Krasner Found.,* 890 F.Supp. 250, 254 (S.D.N.Y.1995)).

## D. Claim IV: Greg Manning Auctions Inc.

■ Claim IV is brought solely against defendant Greg Manning Auctions Inc. It alleges "that Greg Manning participated directly in the Ring by financing the purchase of stamps by defendant Davitt Felder." Am. Compl. ¶ 76. In addition, "Felder transferred or turned over the stamps he purchased as part of the Ring to Greg Manning for resale in Greg Manning's auctions, Manning, Ivy & Mader or in private sales to the damage of plaintiff. . . ." *Id.* ¶ 77. This claim does not specify any law that was violated nor the grounds on which Stolow is entitled to relief. To the extent that this claim alleges antitrust, fraud, RICO, or conspiracy violations, it is duplicative of the other claims. As a result, this claim must be dismissed. *See Lewis v. Rosenfeld,* 138 F.Supp.2d 466, 479 (S.D.N.Y.2001) (dismissing civil conspiracy claim where "conspiracy claim is duplicative of the breach of fiduciary duty and the common law fraud claims").

## E. Claim V: RICO Violations

### 1. Sections 1962(a) and (b)

#### a. Standing

■ "The RICO civil liability provision confers standing on '[a]ny person injured in his business or property by reason of a violation of section 1962.' " *Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21, 23 (2d Cir.1990) (quoting 18 U.S.C. § 1964(c)). A " 'plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property *by the conduct constituting the violation.*' " *Ouaknine v. MacFarlane,*

897 F.2d 75, 83 (2d Cir.1990) (emphasis in original) (quoting *Sedima v. Imrex Co., Inc.,* 473 U.S. 479, 497, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)).

■ Section 1962(a) prohibits any person who derived income from a pattern of racketeering activity from investing that income in an "enterprise", as defined by the statute. *See* 18 U.S.C. §§ 1961(4), 1962(a) (2002); *Ouaknine,* 897 F.2d at 83; *Allen v. New World Coffee, Inc.,* No. 00 Civ. 2610, 2002 WL 432685, at *2 (S.D.N.Y. Mar. 19, 2002). "[T]he essence of a violation of § 1962(a) is not [the] commission of predicate acts but [the] investment of racketeering income." *Ouaknine,* 897 F.2d at 83.[9] Thus, to have standing to bring "a claim for civil damages under section 1962(a), a plaintiff must allege injury from defendants' investment of racketeering income in an enterprise." *Id. See also Fogie v. THORN Americas, Inc.,* 190 F.3d 889, 895 (8th Cir.1999) ("RICO gives only individuals who have suffered injury from the use or investment of racketeering income standing to bring a civil suit under §§ 1962(a) and 1964(c)."); *Vemco, Inc. v. Camardella,* 23 F.3d 129, 132 (6th Cir. 1994); *Nugget Hydroelectric, L.P. v. Pacific Gas & Elec. Co.,* 981 F.2d 429, 437 (9th Cir.1992); *Parker & Parsley Petroleum v. Dresser Indus.,* 972 F.2d 580, 584 (5th Cir.1992); *Danielsen v. Burnside–Ott Aviation Training Ctr., Inc.,* 941 F.2d 1220, 1229–30 (D.C.Cir.1991); *Grider v. Texas Oil & Gas Corp.,* 868 F.2d 1147, 1149–51 (10th Cir.1989).

■ Pursuant to section 1962(b), it is unlawful for "any person through a pattern of racketeering activity . . . to acquire or maintain . . . any interest in or control

---

9. 18 U.S.C. § 1962(a) provides:

It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

of any enterprise...." 18 U.S.C. § 1962(b). The purpose of this statute is "to prohibit the takeover of a legitimate business through racketeering, typically extortion or loansharking." *Allen*, 2002 WL 432685, at *5. Similar to the investment injury requirement of section 1962(a), a plaintiff must suffer an acquisition or maintenance injury to have standing to sue under section 1962(b). *See Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1063 (2d Cir.1996) (dismissing section 1962(b) claim where plaintiff did not allege injury from defendants' acquisition or maintenance of a telephone company enterprise), *rev'd on other grounds*, 525 U.S. 128, 119 S.Ct. 493, 142 L.Ed.2d 510 (1998). Therefore, to have standing under section 1962(b), a plaintiff must allege injury arising from the acquisition or maintenance of any interest in or control of an enterprise. These injuries must be distinct from those resulting from the commission of the predicate acts. *See id.*; *Kaczmarek v. International Bus. Machs., Corp.*, 30 F.Supp.2d 626, 629 (S.D.N.Y.1998) (finding no maintenance or acquisition injury where plaintiff only alleges injury resulting from the existence of the enterprise and the commission of predicate acts).

### b. Stolow Lacks Standing to Bring Claims Under Sections 1962(a) and (b)

 Stolow does not allege an injury from the Stamp Dealers' and Auction Houses' investment of racketeering income in the alleged enterprise.[10] The Amended Complaint only alleges that "[a]s a result of the pattern of racketeering activity, plaintiff suffered damages to business and property." Am. Compl. ¶ 83. Stolow's RICO Statement explicitly states that he does not know how any income derived from the enterprise was used or invested. *See* RICO Statement, Ex. C to Trade Associations' Notice of Motion, ¶ 11.[11] As a result, the section 1962(a) claim must be dismissed for lack of standing. *See Ouaknine*, 897 F.2d at 83.

Similarly, Stolow fails to allege an acquisition or maintenance injury distinct from injury caused by commission of the predicate acts. As alleged, Stolow's injury resulted from defendants' bid-rigging scheme, which is based on the predicate acts of mail and wire fraud. *See* Am. Compl. ¶¶ 78–85. This injury is not a separate and distinct injury caused by the acquisition or maintenance of an alleged enterprise. "Without a distinct 'acquisition injury,' [a plaintiff] cannot state a cause of action under subsection 1962(b)." *Allen*, 2002 WL 432685, at *5 (quoting *Discon*, 93 F.3d at 1063). As a result, Stolow lacks standing to bring the section 1962(b) claim, which is therefore dismissed.

### 2. Section 1962(c)

### a. Standing

Pursuant to section 1962(c), it is unlawful for "any person employed by or associ-

---

10. Stolow adequately alleges that defendants constitute an enterprise. *See* 18 U.S.C. § 1961(4); *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981); *Feinberg v. Katz*, No. 99 Civ. 45, 2002 WL 1751135, at *12 (S.D.N.Y. July 26, 2002) (citing *Procter & Gamble Co. v. Big Apple Indus. Bldgs., Inc.*, 879 F.2d 10, 18 (2d Cir. 1987)). He asserts that the Stamp Dealers were a group of individuals who formed the Ring for the purpose of bid-rigging. *See* Am. Compl. ¶ 13. The Auction Houses are de-

scribed as a group of corporations that worked together to assist the Ring in the bid-rigging scheme. *See id.* ¶ 14. Together these individuals and corporations were an association-in-fact operating as an enterprise engaged in the predicate acts of mail and wire fraud. *See id.* ¶ 80.

11. Paragraph 11(b) of the RICO Statement asks Stolow to "[d]escribe the use or investment of [the racketeering] income." Stolow's response states "Not known."

ated with any [RICO] enterprise ... to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity...." 18 U.S.C. § 1962(c). A plaintiff has standing to bring a section 1962(c) claim if he has been injured in his business or property by a defendant conducting the affairs of an enterprise through a pattern of racketeering activity. *See Sedima,* 473 U.S. at 496–97, 105 S.Ct. 3275; *Ouaknine,* 897 F.2d at 83.

■■■■■ If a plaintiff has standing, a section 1962(c) claim must also allege the existence of two distinct entities: a "person" and an "enterprise." The enterprise cannot simply be the "person" referred to by a different name. *See Cedric Kushner Promotions, Ltd. v. King,* 533 U.S. 158, 121 S.Ct. 2087, 150 L.Ed.2d 198 (2001). A corporate entity may be held liable as a RICO person "where it associates with others to form an enterprise that is sufficiently distinct from itself." *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.,* 30 F.3d 339, 344 (2d Cir.1994).

#### b. Stolow Has Standing to Bring a Claim Under Section 1962(c)

■■■ Stolow has alleged facts showing that he has standing to bring the section 1962(c) claim against the Stamp Dealers and Auction Houses. He sufficiently alleges a RICO violation where "[t]he pattern of racketeering engaged in by defendants [that] involved fraudulent acts in support of the [bid-rigging] scheme constituting mail fraud ... and wire fraud...." RICO Statement ¶ 2. In addition, Stolow alleges that "[a]s a result of the illegal activities in violation of the RICO statute ... plaintiff was driven out of business." *Id.* ¶ 15. This is an adequate allegation of injury to

Stolow's business caused by the Stamp Dealers and Auction Houses conducting the affairs of an enterprise through a pattern of racketeering activity.

Also, Stolow has sufficiently alleged that the bid-rigging enterprise is distinct from each defendant. Unlike enterprises that only consist of a corporation and its employees, here the bid-rigging enterprise is an amalgam of unrelated individual defendants and corporations. *See Kushner,* 533 U.S. at 166, 121 S.Ct. 2087 (determining whether sole shareholder of corporation was a "person" distinct from the enterprise); *Riverwoods,* 30 F.3d at 345 (determining whether distinctness requirement satisfied where enterprise consisted of corporation and its officers). The enterprise consists of nine corporations and seven individuals, all of whom committed the predicate acts of mail and wire fraud. *See* RICO Statement ¶ 2. Neither Stolow nor defendants have alleged that all of the individuals are merely employees or agents of the corporations. Instead, Stolow claims that "all of the defendants acted individually and in consort [sic] to support the illegal enterprise and are members of the enterprise." *Id.* ¶ 6. Stolow has standing and has properly pled his section 1962(c) claim. Accordingly, the motion to dismiss this claim is denied.[12]

#### F. Claim VI: Fraud

#### 1. Pleading Fraud

Under Rule 9(b), in "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). The plaintiff must allege facts supporting the essential elements of the fraud claim. *See Jose Armando Bermudez & Co. v.*

---

**12.** Stolow also brings a claim under section 1962(d), which makes it unlawful for any person to conspire to violate any provision of section 1962. *See* Am. Compl. ¶¶ 78–85;

RICO Statement ¶ 14. Because Stolow has alleged that two or more persons agreed together to violate section 1962(c), the motion to dismiss the section 1962(d) claim is denied.

*Bermudez Int'l, Inc.,* No. 99 Civ. 9346, 2001 WL 1382582, at *3 (S.D.N.Y. Nov. 6, 2001) (citing *Learning Works, Inc. v. Learning Annex, Inc.,* 830 F.2d 541, 546 (4th Cir.1987)).

Stolow brings a common law fraudulent concealment claim against the Stamp Dealers and the Auction Houses, which requires him to allege facts showing: "(1) that the defendant failed to disclose material information that [it] had a duty to disclose, '(2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of the reliance.'" *Bermuda Container Line Ltd. v. International Longshoremen's Assoc., AFL–CIO,* 192 F.3d 250, 258 (2d Cir.1999) (quoting *Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank,* 57 F.3d 146, 153 (2d Cir.1995)).

"A duty to disclose generally arises in one of three ways: (1) when one party makes a partial or incomplete statement that requires clarification; (2) when the parties are in a fiduciary or confidential relationship; or (3) where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge." *All American Adjusters, Inc. v. Acceleration Nat'l Ins. Co.,* No. 96 Civ. 9344, 1997 WL 732445, at *7 (S.D.N.Y. Nov. 25, 1997) (internal quotation marks omitted); *see also Brass v. Am. Film Techns.,* 987 F.2d 142, 150 (2d Cir.1993).

*Next,* a plaintiff must allege that he actually relied on the purported fraudulent statements or omissions. *See Banque,* 57 F.3d at 156. "'Reasonable,

detrimental reliance upon a misrepresentation is an essential element of a cause of action for fraud, and such reliance must be pleaded with particularity.'" *Bermudez,* 2001 WL 1382582, at *3 (quoting *Learning Works,* 830 F.2d at 546). "A party's reliance on false statements or omissions is not reasonable or justifiable if the party has reason to believe that the representations may be false but fails to inquire into their accuracy." *Schlaifer Nance & Co. v. Estate of Warhol,* 927 F.Supp. 650, 660 (S.D.N.Y.1996).

### 2. Stolow Has Not Alleged a Duty to Disclose or Reasonable Reliance

Stolow does not allege facts suggesting that defendants made a partial or incomplete statement nor does he allege facts indicating that he was in a fiduciary or confidential relationship with the Stamp Dealers or Auction Houses. In addition, Stolow does not allege facts supporting a claim that defendants possessed superior knowledge not readily known to others.[13]

The Amended Complaint does not include any allegations from which a duty to disclose can be inferred. According to Stolow, the Stamp Dealers were his competitors. There are no factual allegations of a special relationship among Stolow and his competitors. Similarly, Stolow attended auctions conducted by the Auction Houses, but there are no allegations suggesting any special duty owed to bidders by the Auction Houses. Consequently, the Amended Complaint fails to allege an essential element of fraud, a result of which is that the claim must be dismissed. There is, however, another ground for dismissing this claim.

---

**13.** A duty to disclose based on superior knowledge "ordinarily arises only in the context of business negotiations where parties are entering a contract." *Ray Larsen Assocs., Inc. v. Nikko America, Inc.,* No. 89 Civ. 2809, 1996 WL 442799, at *5 (S.D.N.Y. Aug. 6, 1996). *See also Banque Arabe,* 57 F.3d at 155; *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, N.A.,* 731 F.2d 112, 123 (2d Cir.1984); *Williams v. Bank Leumi Trust Co.,* No. 96 Civ. 6695, 1998 WL 397887, at *4 (S.D.N.Y. July 15, 1998).

Stolow has not pled reasonable reliance because he acknowledges that he was aware of the bid-rigging. *See* Am. Compl. ¶ 54. Essentially, Stolow alleges that he was injured because he could not bid on stamp lots "when aware [that] the Ring was bidding, or even aware that a Ring member viewed the lot." *Id.* Indeed, he states that competition as a whole was affected because it was widely known when Ring members rigged bids. *See id.* Furthermore, Stolow was aware of the Ring's bid-rigging activities, as a result of which, *he* prohibited Ring members from bidding at *his* auctions. *See id.* ¶ 13 (Defendants' actions included "boycotting plaintiff's own auctions, because of *his* refusal to permit the Ring to bid at his sales.") (emphasis added). After devoting numerous pages of the Amended Complaint to alleging that he was aware of the bid-rigging scheme, Stolow attempts to satisfy the fraud pleading requirement by suddenly inserting one sentence denying any knowledge of the scheme. *See id.* ¶ 89 ("Plaintiff was not aware that ... the Ring members in consort [sic] and aided and abetted by the auction house did not permit him to purchase stamps at public auctions for resale in his own sales...."). This awkward and inconsistent denial does not negate Stolow's admission that he was aware of the Ring's activities. This portion of the Amended Complaint is a perfect example of a plaintiff pleading himself out of court by alleging information that defeats his claim. *See Conn v. GATX Terminals Corp.,* 18 F.3d 417, 419 (7th Cir.1994).

### G. Claim VII: Aiding and Abetting

Finally, the Amended Complaint alleges that the ASDA and APS aided and abetted the illegal activities of the Stamp Dealers and Auction Houses by failing to investigate the matter, in violation of the Trade Associations' bylaws. It is unclear whether Stolow is seeking damages for the Trade Associations' violation of their own bylaws or simply for the Associations' role as aiders and abettors. In any event, the claim is dismissed on both grounds.

### 1. Bylaws Violation

The bylaws of a corporation constitute a contract between a corporation and its members. *See ALH Props. Ten, Inc. v. 306–100th Street Owners Corp.,* 191 A.D.2d 1, 600 N.Y.S.2d 443, 452 (1st Dep't 1993); *Procopio v. Fisher,* 83 A.D.2d 757, 443 N.Y.S.2d 492, 495 (4th Dep't 1981). Similarly, the "bylaws of an unincorporated association express the terms of a contract which define privileges secured and the duties assumed by those who have become members." *Desir v. Spano,* 259 A.D.2d 749, 687 N.Y.S.2d 411, 411 (2d Dep't 1999). A third-party, who is not a member of the association or corporation nor a party to the bylaws, lacks standing to bring suit against an organization for violation of its bylaws. *See Local 1–2, Util. Workers of America v. Helmer,* 734 F.Supp. 652, 653 (S.D.N.Y.1990) (The "By–Laws violation [is] dismissed for lack of standing because [counter-claim plaintiff] is not a member of the Union and not a party to the By–Laws contract."). Were it otherwise, bylaws would subject organizations to unlimited liability resulting from duties owed to third-parties who have no relationship to the organization.

Stolow alleges that pursuant to the bylaws of the Trade Associations, each organization agreed to "assist governmental agencies in the prosecution of violations of laws relating to philatelic materials." Am. Compl. ¶¶ 92, 94. According to Stolow, he notified the ASDA in writing of the illegal activities of the Ring, but the ASDA refused to act because one or more of its board members were involved in the illegal activity. *See id.* ¶ 97. Similarly, the APS was aware or should have been aware of the Ring's activities, but also failed to in-

vestigate. *See id.* ¶ 9. Nonetheless, this claim must be dismissed because Stolow does not allege that he is a member of either of these associations. He is owed no duty under their bylaws and therefore lacks standing to bring an action for bylaws violation.

### 2. "Substantial Assistance"

▬▬▬ To allege aiding and abetting, a plaintiff must claim: (1) a violation of law by the primary party; (2) knowledge of the violation by the aider and abettor; and (3) "substantial assistance" by the aider and abettor in achieving the primary violation. *See, e.g., Armstrong v. McAlpin,* 699 F.2d 79, 91 (2d Cir.1983); *IIT, an Int'l Inv. Trust v. Cornfeld,* 619 F.2d 909, 923 (2d Cir.1980); *Cromer Fin. Ltd. v. Berger,* 137 F.Supp.2d 452, 470 (S.D.N.Y.2001). Because the Amended Complaint excludes the Trade Associations from the RICO claim and because Claims III, IV, and VI are dismissed, the only remaining violations that the Trade Associations could have aided and abetted are the antitrust claims. However, Stolow does not allege any facts supporting the claim that the Trade Associations provided substantial assistance to the Stamp Dealers and Auction Houses with respect to these violations.

Inaction by a party is not typically considered substantial assistance. *See Armstrong,* 699 F.2d at 91. "Inaction is 'actionable participation only when the defendant owes a fiduciary duty directly to the plaintiff.'" *Cromer,* 137 F.Supp.2d at 470 (discussing inaction in the fraud context) (quoting *Kolbeck v. LIT Am. Inc.,* 939 F.Supp. 240, 247 (S.D.N.Y. 1996)). As already discussed, the Trade Associations did not owe Stolow any duty to investigate the Stamp Dealers and Auction Houses. The Trade Associations' failure to investigate is not sufficient affirmative assistance to qualify them as aiders and abettors. Consequently, this claim is dismissed.

### III. SUMMARY JUDGMENT

The Stamp Dealers and Auction Houses move for summary judgment on the remaining antitrust and RICO claims (Claims I and II and part of V). Defendants contend that based on the undisputed facts, Stolow's claims are time-barred. *See* Auction Houses Mem. at 4–7.

### A. Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "An issue of fact is 'material' for these purposes if it might affect the outcome of the suit under the governing law [while] an issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Shade v. Housing Auth. of City of New Haven,* 251 F.3d 307, 314 (2d Cir.2001) (internal quotation marks and citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (internal quotation marks and citations omitted).

In assessing the record to determine whether genuine issues of material fact are in dispute, a court must resolve all ambiguities and draw all reasonable factual inferences in favor of the non-moving party. *See Parkinson v. Cozzolino,* 238 F.3d 145, 150 (2d Cir.2001). "Although the moving party bears the initial burden of establish-

ing that there are no genuine issues of material fact, once such a showing is made, the nonmovant must 'set forth specific facts showing that there is a genuine issue for trial.'" *Weinstock v. Columbia Univ.,* 224 F.3d 33, 41 (2d Cir.2000) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

The non-moving party may not, however, "rest upon ... mere allegations or denials." *St. Pierre v. Dyer,* 208 F.3d 394, 404 (2d Cir.2000). "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.,* 196 F.3d 435, 452 (2d Cir.1999); *see also Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir.1998) ("If the evidence presented by the non-moving party is merely colorable, or is not significantly probative, summary judgment may be granted.") (quotation marks, citations, and alterations omitted). Mere conclusory statements, conjecture or speculation cannot by themselves create a genuine issue of material fact. *See Kulak v. City of New York,* 88 F.3d 63, 71 (2d Cir.1996).

### B. Antitrust Claims

#### 1. Applicable Statute of Limitations

 Pursuant to section 4B of the Clayton Act and section 340(5) of the New York General Business Law, private antitrust suits are governed by a four-year statute of limitations. *See* 15 U.S.C. § 15b; *Klehr v. A.O. Smith Corp.,* 521 U.S. 179, 189, 117 S.Ct. 1984, 138 L.Ed.2d 373 (1997). Antitrust actions accrue when a defendant commits an act that injures plaintiff's business in violation of the anti-

trust statutes. *See Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 338, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971). When there is an alleged continuing antitrust conspiracy, the statute of limitations "has usually been understood to mean that each time a plaintiff is injured by an act of the defendants a cause of action accrues to him to recover the damages caused by that act and that, as to those damages, the statute of limitations runs from the commission of that act." *Higgins v. New York Stock Exch. Inc.,* 942 F.2d 829, 832 (2d Cir.1991). However, "the commission of a 'separate and new overt act' will not permit the plaintiff to recover for the injury caused by the old overt acts that do not fall within the limitations period." *Nine West Shoes Antitrust Litigation,* 80 F.Supp.2d 181, 192 (S.D.N.Y.2000) (quoting *Klehr,* 521 U.S. at 189, 117 S.Ct. 1984).

 The statute of limitations in a private antitrust suit is tolled "[w]henever any civil or criminal proceeding is instituted by the United States to prevent, restrain, or punish violations of any of the antitrust laws." 15 U.S.C. § 16(i).[14] Also, the statute of limitations may be tolled under the doctrine of fraudulent concealment. A "plaintiff may prove fraudulent concealment sufficient to toll the running of the statute of limitations if he establishes (1) that the defendant concealed from him the existence of his cause of action, (2) that he remained in ignorance of that cause of action until some point within four years of the commencement of his action, and (3) that his continuing ignorance was not attributable to lack of diligence on his part." *New York v. Hendrickson Bros., Inc.,* 840 F.2d 1065, 1083 (2d Cir.1988).

---

14. The statute of limitations is not tolled by State actions brought under the Clayton Act. Additionally, private actions brought under the Donnelly Act are not tolled by New York Attorney General proceedings. *See* N.Y. Gen. Bus. Law § 342–c (2002) (providing for the "[t]olling of the period of limitations by proceedings of the *United States"*) (emphasis added).

### 2. Stolow's Antitrust Claims Are Time–Barred

■■■ Stolow's Sherman Act and Donnelly Act claims are time-barred because they were not brought within the four-year statute of limitations period. Stolow "had finally been driven out of business" by August 14, 1997. 6/9/00 Deposition of Gregory Stolow ("Stolow Dep."), Ex. F to 7/24/02 Declaration of Carol Meltzer, General Counsel of Greg Manning Auctions Inc. and Ivy & Mader Philatelic Auctions, Inc. ("Meltzer Decl."), at 86. *See also* 8/14/97 Letter to John Apfelbaum from Peter T. Goodrich ("Goodrich Letter"), Ex. E to Meltzer Decl., at 1. Therefore, August 14, 1997 is the latest possible date that he could have suffered a business injury, and the latest date that an antitrust cause of action accrued. *See Zenith*, 401 U.S. at 338, 91 S.Ct. 795. As a result, the statute of limitations had run by August 14, 2001. Stolow did not file his Complaint until April 4, 2002.

Despite Stolow's new contention that he was never driven out of business, there is no genuine issue of material fact as to the date of his injury. Stolow has repeatedly admitted that he was driven out of business by defendants' conduct. In a letter dated August 14, 1997, Stolow's attorney, Peter Goodrich, wrote to defendant John Apfelbaum, stating that Stolow had been driven out of business. *See* Goodrich Letter at 1; Fed.R.Evid. 801(d)(2). The letter further advises Apfelbaum that Stolow will pursue legal action to recoup $5 million for damages caused over ten years, unless Apfelbaum negotiates a settlement. *See id.* The parties did not negotiate a settlement and Stolow did not pursue legal action at that time.

Stolow again admitted that he was driven out of business by 1997 during a deposition related to the New York Attorney General's investigation of the Ring in 2000. When the Assistant Attorney General asked Stolow why he initially decided to contact Goodrich, Stolow responded: "Well, I had finally been driven out of business by the ring by not being able to buy any products and I no longer felt pressured or afraid of retribution because I was out of the business so I went to the attorney and tried to see if I could sue them." Stolow Dep. at 86. He explained further that his family-owned businesses, J & H Stolow and Gold Medal Auctions, ended in 1989 and 1996, respectively. *See id.* at 34–35.

Most importantly, Stolow admits that he was driven out of business to support his overall theory of damages. In the Amended Complaint, he alleges how he was injured by defendants' misconduct, stating that "[i]n summary [defendants'] activities drove plaintiff out of business." Am. Compl. ¶ 56. Similarly, in his RICO statement, he claims that "as a result of [defendants'] illegal activities … plaintiff was driven out of business." RICO Statement ¶ 16.

In response to the Stamp Dealers' and Auction Houses' summary judgment motion, Stolow now argues for the first time that he "is a stamp dealer uninterruptedly since the 1960's currently selling stamps out of his residence." Gregory Stolow's Statement of Material Facts Pursuant to Local Rule 56.1(b) ("Rule 56.1 Statement") ¶ 1. The only support he cites for the contention that he was never driven out of business is his deposition testimony, where he describes himself as being a self-employed stamp dealer operating out of his home. *See* Stolow Dep. at 28–29. However, during the same deposition he explains that he decided to consider legal action after he was finally driven out of business. *See id.* at 86.

Stolow's frequent admissions that he was driven out of business cannot be genu-

inely disputed by his unsupported, self-serving Rule 56.1 Statement conclusory statement that he remains in business. His new allegation does not create a genuine issue of material fact. *See Tadros v. Coleman,* 717 F.Supp. 996, 1006 (S.D.N.Y. 1989) ("Self-serving, conclusory allegations cannot defeat [a summary judgment motion]."). Moreover, this unsupported argument is "insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff,* 196 F.3d at 452.

 Stolow contends that the statute of limitations for any injury suffered before 1998 was tolled by the commencement of the Department of Justice's ("DOJ") criminal action and by the doctrine of fraudulent concealment. *See* Memorandum of Law in Opposition to Auction Houses Mem. at 12. Both parties acknowledge that the DOJ did not begin its proceedings until 2002. *See* Affidavit of Gregory Stolow ("Stolow Aff."), Ex. A; Defendants Greg Manning Auctions, Inc., Ivy & Mader Philatelic Auctions, Inc., et al. Reply Memorandum at 4. Therefore, any injury that occurred before 1998 was already time-barred before the DOJ began its proceedings.

 The doctrine of fraudulent concealment also fails to toll the statute of limitations. It is undisputed that Stolow was fully aware of the bid-rigging scheme no later than 1997. The Goodrich Letter informed Apfelbaum that Stolow knew that the Ring has rigged bids since "at least 1987." *See* Goodrich Letter at 1. In addition, on November 29, 1997, Stolow sent a letter to Greg Manning, detailing the bid-rigging and his intent to bring suit against the Ring and the Auction Houses. *See* 11/29/97 Letter to Greg Manning from Gregory Stolow, Ex. D to Stolow Aff., at 1. Because Stolow was aware of the scheme

as early as 1997, the doctrine of fraudulent concealment cannot toll the statute of limitations.

## C. RICO Claims

### 1. Applicable Statute of Limitations

 Although no statute of limitations is explicitly set forth in the RICO statute, the Supreme Court has held that civil RICO actions are subject to the four-year limitations period contained in section 4B of the Clayton Act. *See Klehr,* 521 U.S. at 188–89, 117 S.Ct. 1984; *Agency Holding Corp. v. Malley–Duff & Assocs., Inc.,* 483 U.S. 143, 156, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987). "The limitations period begins to run when the plaintiff discovers or should have discovered the RICO injury." *In re Merrill Lynch Ltd. P'ships. Litig.,* 154 F.3d 56, 60 (2d Cir.1998). "[T]his Court recognizes a 'separate accrual' rule under which a new claim accrues and the four-year limitation period begins anew each time a plaintiff discovers or should have discovered a new and independent injury." *Id.* at 59. Under the separate accrual rule, when a plaintiff is continuously injured by an underlying RICO violation, he may only recover for injuries discovered or discoverable within four years of the time suit is brought. *See Bingham v. Zolt,* 66 F.3d 553, 560 (2d Cir.1995).

### 2. Stolow's RICO Claims Are Time–Barred

As discussed in detail in Part III.B.2, there is no genuine issue of material fact concerning the date when Stolow's business was last injured by the alleged RICO violations. As a result, his claims under sections 1962(c) and (d) are not within the four-year statute of limitations and are dismissed. Furthermore, the doctrine of fraudulent concealment does not toll the statute of limitations for the reasons previously stated in Part III.B.2.[15]

**15.** Although Stolow's claims under sections 1962(a) and (b) have been dismissed for lack

## IV. CONCLUSION

For the foregoing reasons, pursuant to Rule 12(b)(6), the Trade Associations' motion to dismiss is granted and all claims against the Associations are hereby dismissed. The Stamp Dealers' and Auction Houses' Rule 12(b)(6) motion to dismiss is partially granted and their Rule 56 motion for summary judgment is granted in full. Therefore, all claims against all defendants are dismissed. The Clerk of the Court is directed to close these motions and this case.

SO ORDERED.

of standing, they are also dismissed as time-barred.